IN THE MATTER OF THE LAST WILL OF DR. J. W. UNDERHILL, DECEASED.

*Testamentary capacity affected by habit of using cocaine.*

Under the facts in this case the court finds that by a long and continued use of cocaine, testator's mental capacity became so impaired that at the time of the execution of the paper purporting to be his last will, he was of unsound mind.

*Decided March* 14, 1889.

THE facts are stated in the opinion.

*Wm. E. Jones* and *Johnson & Levy*, for the executor.

*Ramsey, Maxwell & Ramsey*, for heirs.

GOEBEL, J.

Dr. J. W. Underhill, on the 10th day of September, 1886, executed a paper writing, purporting to be his last will and testament, in which he devided substantially his property equally between his children, and appointed J. Wm. Johnson as executor, and Theodore Spear, guardian for his minor children. On the 8th day of January, 1887, he executed a paper writing,

purporting to be a codicil to his last will and testament, revoking the appointment of Theo. Spear as guardian, and appointing Dr. Chas. A. Burhaus as guardian of his minor children.

Dr. Underhill died on the 28th day of January, 1889. This paper writing is now offered for probate. In support thereof, Wm. H. Jones, Dr. Trush and Dr. Thacker, subscribing witnesses to the will, Charles F. Klayer and Wm. Catinaud, subscribing witnesses to the codicil, were called, together with other witnesses.

Dr. Underhill was, for many years, a physician in good practice in this city. He became addicted to the use of morphine, and, subsequently, to the use of cocaine, and was using these drugs at the time of the execution of this paper writing, and up to the time of his death.

To what extent he was using cocaine at the time of the execution of this paper, the testimony does not disclose. It is evident that the habit grew upon him, and from time to time he increased the doses, so that during the latter period of his life, he was taking sixty grains per day.

Prior to, and after the execution of this paper, he was laboring under hallucinations that persons were pursuing him, and intended to do him bodily harm; that he was in danger of his life, and carried firearms. He imagined that friends (whom he considered

enemies), intended to incarcerate him in an asylum. He secluded himself from them, writing insulting letters, and complaining of their actions and conduct towards him, when there was nothing to complain of. When remonstrated with, he would apologize, and again make the complaint.

At the time of the execution of this paper, he was at the Hotel Emery, in this city, having returned from a place in Kentucky. He was then under medical treatment by Doctors Trush and Thacker, two of the subscribing witnesses. On that day, these hallucinations did not manifest themselves.

Prior to, and at that time, and after the execution of this paper, he was laboring under an illusion of having bacteria. He imagined that they were present in his body, and were creeping through his skin; he constantly spoke of them, and insisted upon a microscopical examination of specimens of scrapings which he had sent to Dr. Thacker. He could not be persuaded that he did not have bacteria.

At the time of the execution of this paper, he was under the influence of cocaine. Aside from the hallucinations and illusions, at times he would talk rationally upon subjects, and then his mind seemed to be clear. At the time of the signing of the paper, Mr. Jones believed him to be of sound mind; Doctors Rush and Thacker that he was of unsound mind.

There is no conflict in the testimony as to his

being addicted to this habit.   As to his mental condition at the time of the execution of this paper, whatever it may have been, the hallucinations and illusions were of a diseased mind, the result of a continued and excessive use of cocaine.

Was Dr. Underhill at the time of the execution of this paper, a person of sound mind and under no restraint?   Until permanent disorder is proved to exist, no presumption of insanity can arise.   Sanity being the normal condition of the human mind, is favored by the general presumption.   Under section 5929, Rev. Stats., the burden of proof is upon the party offering the will for probate.

The American and English authorities hold, that a partial unsoundness, not affecting the general faculties, and not operating on the mind of a testator, in regard to testamentary dispositions, is not sufficient to render a person incapable of disposing of his property by will.

It must be conceded that the hallucinations and illusions, in point of fact, had no influence whatever, on the mind of the testator, in regard to testamentary disposition.   Persons of unsound mind are not wholly without reason.   In the midst of lunacy, the logical operations of the mind, though disturbed, are not necessarily extinguished.   The innate force of logic frequently reasserts itself in the midst of incoherency, and gives consistency of action ; again, such persons

may do right, or do wrong in a particular matter. Hence, the fact that he made such disposition of his property as the law would have made, in the absence of a will, affords no conclusive test of the soundness of his mind.

Nor can we conclude therefrom, that he had testamentary capacity. The question still remains, was he of sound mind ?   Or rather, how far is the degree of unsoundness of mind involved in the hallucinations and illusions under which Dr. Underhill labored, as would make it fatal to a testamentary capacity.

This being a question of fact to be determined from the evidence, our conclusion is that by a long continued and excessive use of cocaine, his general faculties became so impaired that at the time of the execution of this paper writing, he was of unsound mind.